UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | 13-111-SDD-SCR |
| RAYMOND CHRISTOPHER REGGIE | |

## RULING

This matter is before the Court on the *Motion to Withdraw Guilty Plea Pursuant to Rule 11(d)(2)(B)*[1] by the Defendant, Raymond Christopher Reggie ("Defendant"). The Government has filed an *Opposition*[2] to this motion. A hearing was held on this motion on June 17, 2015, and the Court heard testimony and received evidence on Defendant's motion. Because the Defendant has failed to provide a fair and just reason for permitting withdrawal of the plea, the motion shall be denied. The Court hereby adopts all of the reasons stated from the bench and sets forth additional reasons below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Defendant was originally indicted on August 14, 2013.[3] A Superseding Indictment was returned on February 20, 2014 charging the Defendant with five counts of wire fraud.[4] This matter was originally set for trial on January 21, 2014, and later re-set for April 14, 2014, and then ultimately October 20, 2014. The Defendant suffered a stroke on October 6, 2014, and requested a continuance. The Court granted an "ends

---

[1] Rec. Doc. No. 194.
[2] Rec. Doc. No. 202.
[3] Rec. Doc. No. 1.
[4] Rec. Doc. No. 61.

1

of justice" continuance and set a telephone status conference for October 20, 2014 to obtain an update on the Defendant's medical condition.[5] During the October 20, 2014 status conference, the Court was advised by Defendant's counsel that he had been released that very morning from a rehab facility; thus, the Court set the trial for October 27, 2014.[6] The Defendant again moved for a continuance, which the Court denied based on the existing record.[7] However, this *Ruling* noted that the Court's specific request for medical documentation regarding "his progress, speech and communication skills, cognitive function and medical ability to be present for trial" was never provided.[8] Rather than going to trial on October 27, 2014, the Defendant chose to enter guilty pleas to the five counts with which he was charged.[9]

Sentencing in this matter was originally set for June 4, 2015. On May 20, 2015, counsel for the Defendant moved to withdraw and substitute new counsel.[10] Before being properly enrolled, new counsel moved to continue the sentencing.[11] The Court granted this continuance and set the sentencing for June 17, 2015.[12] On June 2, 2015, newly enrolled counsel for the Defendant filed the motion now before the Court to withdraw the guilty pleas entered on October 27, 2014.

## II. DEFENDANT'S MEDICAL CONDITION

The Defendant claims that the Court did not grant him a sufficient continuance of the October 20, 2014 trial date to allow him to recover from the stroke he suffered on October 6, 2014. The Defendant also claims that the Court's denial of his second trial

---

[5] Rec. Doc. No. 165.
[6] Rec. Doc. No. 166.
[7] Rec. Doc. No. 175 (UNDER SEAL).
[8] *Id.*
[9] Rec. Doc. No. 178.
[10] Rec. Doc. No. 189.
[11] Rec. Doc. No. 190.
[12] Rec. Doc. No. 193.

continuance request "forced Reggie to proceed to trial" and left him "little choice but to plead guilty."[13]

Many of these arguments were already considered and rejected by the Court in its previous *Ruling*[14] for the very simple reason that the Defendant never provided the Court with any medical evidence that he was unable to be present for and participate in his trial. No amount of hyperbole, added emphasis, underlined, emboldened, or italicized arguments transform the facts in Defendant's favor. Moreover, the Court's acknowledgement of Defendant's slow speech and common courtesy to offer for him to sit during the plea is not evidence of the Defendant's lack of cognitive function and medical ability to be present for trial or his lack of ability to understand the arraignment proceedings.[15]

The Court need not reiterate the findings in its previous *Ruling*. The Court considered the appropriate factors and followed the law set forth in that *Ruling* as applicable to the facts of the case and the Defendant's medical circumstances. As set forth therein, "[f]or a denial of a continuance to constitute an abuse of discretion, the medical repercussions must be serious and out of the ordinary; the impending trial must pose a substantial danger to defendant's life or health." The Defendant has yet to provide the Court any medical evidence that satisfies this standard.

---

[13] Rec. Doc. No. 194-1, p. 2.
[14] Rec. Doc. No. 175 (UNDER SEAL). The Court adopts by reference the reasoning and analysis in this previous *Ruling*.
[15] Despite the Court's request for medical documentation regarding Defendant's "condition, specifically addressing his progress, speech and communication skills, cognitive function and medical ability to be present for trial," such information was never provided, and none of the exhibits provided to the Court by the Defendant, including the most recent exhibits, have ever satisfied this request. *See* Rec. Doc. Nos. 161 & 175. In fact, upon release from the Rehab Facility on October 20, 2014, the discharge instructions by Dr. Reddy provide for only minimal restrictions to Reggie's daily activities and allow that he "gradual[ly] return to previous activities." Rec. Doc. No. 75, quoting Rec. Doc. No. 170-1, p. 1.

3

The Defendant now offers medical evidence to suggest that he was diagnosed with a "brain lesion" two days after his guilty plea which impaired his speech abilities. However, Defendant's Exhibit E is not a "smoking gun" of new information or a new diagnosis. Exhibit E merely evidences a follow-up visit regarding the stroke suffered on October 6, 2014. While page two of this document, which appears to be a record from an office visit on October 29, 2014, does indicate that the primary reason for the visit is "Unable to speak due to brain lesion – Primary," there is no reason to believe that this treatment was any new injury and/or diagnosis but rather continued treatment for what is clearly shown on page one of Exhibit E as the notation "Unable to speak due to brain lesion" dated October 7, 2014. It appears quite obvious that the "brain lesion" is in fact the objective evidence of the stroke suffered by the Defendant on October 6, 2014. It is not any new development. This exhibit is not evidence of new information not previously known by the Court and does not indicate a more drastic condition than on any other date. Moreover, this document is unresponsive to the specific requests by the Court as to the Defendant's condition.

The term "unable to speak" is also not medically defined or explained. The record makes clear that the Defendant was not rendered mute by his stroke. While the record reflects that Defendant's speech was slow and slightly impaired at the arraignment, at no time did the Court ask Defendant to repeat his answers or fail to understand his answers. Likewise, the court reporter apparently had no trouble accurately recording Defendant's sworn statements. Thus, any impairment to Defendant's speech was not so severe that it prevented effective communication between the Defendant and his attorneys or the Defendant and the Court. There can

4

certainly be no argument that the Defendant was literally "unable to speak" during the arraignment on October 27, 2014. Moreover, the question remains: if any treating physician believed and/or diagnosed the Defendant with a condition so severe that his cognitive function was so impaired and his health so threatened by proceeding to trial, why did no physician ever communicate by letter, submit an affidavit, or testify to such facts in the three weeks between Defendant's stroke and his trial date/arraignment? The Court specifically advised Defendant's counsel on at least three occasions that such a communication would justify a continuance of the trial date in this matter.

It is also important to note that Defendant's current counsel enrolled in this matter on May 26, 2015. Current counsel was not present before, during, or soon after the Defendant's stroke and subsequent guilty pleas. Prior to May 26, 2015, the Defendant was represented by two very capable attorneys who the Defendant himself expressed satisfaction with at his arraignment proceeding.[16] The Court specifically asked Defendant's lead counsel David Courcelle ("Courcelle") if he had the opportunity to discuss with the Defendant the arraignment proceedings and ramifications of entering guilty pleas to the counts charged. Courcelle responded "yes" when asked if the Defendant "is understanding and able to cognitively understand these proceedings today?"[17] Courcelle continued: "We have spent a lot of time going through it much slower, but, yes."[18] Courcelle counseled the Defendant regarding numerous matters relating to this case including his decision to plead guilty, discussed this matter with the Defendant on their drive from New Orleans to Baton Rouge on the day of the arraignment, and stood with the Defendant in open court and confirmed as an officer of

---

[16] Rec. Doc. No. 180, p. 6.
[17] *Id.* at p. 5, lines 5-9.
[18] *Id.* at p. 5, lines 11-12.

5

the Court and a zealous advocate that the Defendant had the mental and physical capacity to enter the guilty pleas. The Court is unpersuaded by current defense counsel's claims as to the Defendant's speech abilities and mental capacity on the date of the arraignment since current counsel was not present in the courtroom on that date.

The Court also asked the Defendant several questions to ensure that the Defendant had capacity to enter the plea. If at any time the Court believed that the Defendant lacked capacity or was not knowingly and voluntarily entering his pleas, the Court would have stopped the proceedings. The Court asked the Defendant why he was in court; he responded: "to plead guilty."[19] The Defendant continued to provide correct responses to the Court's questions regarding the day of the week, the date, the year, Defendant's age, date of birth, and his current address.[20] All of these answers were provided clearly and without hesitation. The Court even asked the Defendant if he could read the newspaper and understand current events. The Defendant responded in the affirmative and indicated that he knew that the New Orleans Saints had played Green Bay over the previous weekend.[21] The Defendant recounted that he finished college at Tulane in 1984 with a degree in Communications and has been employed most of his adult life in the field of Advertising.[22]

The Defendant acknowledged under oath that no physician had cautioned him against making any important life decisions; the Defendant also indicated he was able to understand his checkbook and pay his bills.[23] The Defendant stated in his own words

---

[19] *Id.* at p. 3, line 10.
[20] *Id.* at pp. 4-5.
[21] *Id.* at p. 5, lines 14-21.
[22] *Id.* at p. 7, lines 4-20.
[23] *Id.* at p. 8.

that he was charged with "five counts of stealing nine checks."[24] When asked by the Court what wire fraud means, the Defendant responded: "I put the check in the bank and it went out of Louisiana and then made it fraud."[25] When the Government presented the Factual Basis for the pleas, the Defendant advised the Court that there were certain factual statements in the Government's proffer with which he disagreed.[26] The Defendant advised the Court that he never worked for Super Chevy, and Courcelle explained to the Court the factual disagreements with the Government's Factual Basis and presented the Defendant's own Factual Basis.[27] At one point during this part of the colloquy, the Court permitted Courcelle and the Defendant to confer off the record to ensure that the Defendant understood the impact of the Factual Basis.[28] Finally, when asked by the Court what the Defendant did that "got us here today," the Defendant responded: "I took Supreme checks and put them in my bank."[29] Hence, the inflammatory and disingenuous argument that the Defendant merely "grunt[ed] short answers on cue"[30] is without merit and undermined by any fair reading of the actual transcript of the proceedings.

From the plea colloquy and the Defendant's demeanor in court, this Court concluded that the Defendant was oriented to date, time, place, current and historical events. The Defendant exhibited no behavior or demeanor which suggested a cognitive impairment that impacted or interfered with his ability to knowingly and freely enter a plea.

---

[24] Id. at p. 9, line 10.
[25] Id. at p. 9, lines 14-16.
[26] Id. at p. 17, lines 20-25.
[27] Id. at pp.18-20.
[28] Id. at p. 21, lines 17-25.
[29] Id. at p. 24, lines 7-10.
[30] Rec. Doc. No. 206, p. 3.

7

III. LAW & ANALYSIS

A. Withdrawing a Guilty Plea

"It is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence."[31] Rather, "the right to do so is within the sound discretion of the trial court."[32] The Court may permit withdrawal before sentencing if the defendant can establish a "fair and just reason for requesting the withdrawal."[33]

When considering whether to grant a motion to withdraw a guilty plea, the Court considers the factors set forth in *United States v. Carr*: Whether (1) defendant has asserted his innocence; (2) the government would suffer prejudice if the withdrawal motion were granted; (3) the defendant delayed in filing his withdrawal motion; (4) the withdrawal would substantially inconvenience the court; (5) close assistance of counsel was available; (6) the original plea was knowing and voluntary; and (7) the withdrawal would waste judicial resources.[34] The Court also considers "the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion."[35]

"No single factor or combination of factors mandates a particular result."[36] Instead, the Court makes its determination based on the totality of the circumstances.[37] "For example, the longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion."[38] "The burden of

---

[31] *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir.1981).
[32] *Id.*
[33] Fed.R.Crim.P. 11(d)(2).
[34] 740 F.2d 339, 343–44 (5th Cir.1984); *accord United States v. Marquez*, 12–41422, 2013 WL 6044228, at *2 (5th Cir. Nov.15, 2013).
[35] *Id.* at 344.
[36] *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991).
[37] *Carr*, 740 F.2d at 344 (citing *United States v. Morrow*, 537 F.2d 120, 146 (5th Cir.1976)).
[38] *Id.* (citing *United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975)).

8

establishing a fair and just reason for withdrawing a guilty plea remains at all times on the defendant."[39]

### B. The *Carr* Factors

The Court will now turn to an examination of the *Carr* factors as required by the Fifth Circuit. As will be shown below, the weight of these factors strongly militates against granting the Defendant's motion.

#### 1. Defendant's Assertion of Innocence

Defendant contends that he is innocent and has always asserted his innocence in this matter "up until his plea on October 27, 2014" ... allegedly because he was "a shell of the man that he was prior to his stroke."[40] Defendant then makes the preposterous assertion that the Court "forced"[41] him to plead guilty by not granting him yet another continuance to sufficiently recover from his stroke. As the Court has addressed the Defendant's medical condition at length above, that analysis will not be repeated here.

The remainder of the Defendant's argument regarding his innocence suggests only to the Court that he lied under oath on several occasions during his arraignment. As specifically cited above, the Defendant acknowledged at least two different times that he was guilty of the charges to which he was entering pleas: "I put the check in the

---

[39] *Badger*, 925 F.2d at 104 (citing *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir.1988)).
[40] Rec. Doc. No. 194-1, p. 8. Counsel for Defendant also claims that this "was or should have been obvious to all." However, the record reflects that this "fact" was not "obvious" to the two attorneys representing Defendant at the arraignment and was apparently not "obvious" to any treating physician as none ever advised the Court that the Defendant's condition rendered him incapable of standing trial.
[41] *Id.* During the June 17 hearing, the Defendant mischaracterized communications between the parties and a member of the Court's staff. The actual e-mail communication is attached hereto, with redacted contact information, to clarify the actual communication between the Court and the parties on October 25, 2014.

bank and it went out of Louisiana and then made it fraud"[42]; "I took the Supreme checks and put them in my bank."[43] The Defendant also entered his own version of a Factual Basis which acknowledged and admitted his guilt.[44] Defendant's Factual Basis gives a detailed account of how the Defendant executed his scheme to defraud.[45] Courcelle also advised the Court of the Defendant's acknowledgement of guilt: "But for the purposes of the Factual Basis today he is admitting to the four elements of wire fraud, your Honor, and our Factual Basis sufficiently states that"[46]; "He is admitting that he did receive checks from Super Chevy."[47] Finally, when asked "how do you plead" to all five counts, the Defendant clearly responded "guilty" as to every count.[48] It is also important to note that, months later when interviewed by the probation officer, the Defendant maintained his guilt and expressed remorse for his actions according to the Presentence Investigation Report ("PSR").[49]

The Fifth Circuit instructs that "[s]olemn declarations in open court carry a strong presumption of verity."[50] A defendant ordinarily may not refute testimony given under oath at a plea hearing.[51] The Defendant did not claim innocence of the conduct he admitted to in his Factual Basis until after viewing the PSR.

Significantly, at the hearing on the motion to withdraw his guilty pleas, the Defendant testified twice that he stands by his factual basis and that the factual basis he

---

[42] Rec. Doc. No. 180, p. 9, lines 15-16.
[43] *Id.* at p. 24, lines 9-10.
[44] *Id.* at p. 19.
[45] Rec. Doc. No. 176.
[46] Rec. Doc. No. 180, p. 19, lines 16-18.
[47] *Id.* at p. 22, lines 11-12.
[48] *Id.* at pp. 26-27.
[49] Rec. Doc. No. 185 (UNDER SEAL), p. 15, ¶ 38.
[50] *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009)(internal quotation marks and citation omitted).
[51] *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

submitted is true. The timing of this motion undermines the Defendant's credibility on this issue. In *Carr*, the Fifth Circuit made clear that allowing a defendant to withdraw a guilty plea "is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."[52] The Court finds that this factor weighs against permitting withdrawal of the Defendant's pleas.

### 2. Prejudice to the Government

The Defendant states simply that the Government will not suffer any prejudice if the motion to withdraw is granted because it was ready to proceed to trial on October 27, 2014, and "nothing stands in their way to prosecuting this matter."[53] The Government disagrees with Defendant's assertion pointing out the costs and logistics of arranging travel for witnesses from Florida, Michigan, Illinois, Georgia, Texas, and several locations in Louisiana; the preparation of each witness for trial which requires altered family and work schedules; and the need for witnesses to re-familiarize themselves with facts that were fresh to them back in October.

The Court finds that the Government has presented valid arguments that it will be prejudiced if the Defendant's motion is granted. Even if no prejudice to the Government would result, the *Carr* court stated, "we do not believe that the absence of a showing of prejudice to the government, by itself, should be sufficient to mandate permission to withdraw a plea when, as here, no credible reason is proffered."[54]

---

[52] *Carr*, 740 F.2d at 345.
[53] Rec. Doc. No. 194-1, p. 10.
[54] *Carr*, 740 F.2d at 345, quoting *United States v. Rasmussen*, 642 F.2d 165, 168 n. 6 (5th Cir. 1981).

### 3. Delay in Filing the Withdrawal Motion

Citing again to his medical condition, the Defendant contends he did not delay in filing this motion since his original sentence date was June 3, 2014. The Court finds that this contention lacks merit. As the Government correctly calculated, the Defendant moved to withdraw his guilty plea 218 days after he pled guilty. The *Carr* court held that district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea when he waited twenty-two (22) days to request withdrawal and only did so three (3) days before sentencing.[55] Indeed, "the longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion."[56] The Court has already addressed the issue of Defendant's medical condition and finds that it was no justification for this substantial delay. In October of 2014, the Defendant failed to produce medical evidence which would support his request for a trial continuance, and in the 218 days since his guilty pleas, the Defendant has failed to produce any medical evidence which substantiates or in any way supports his argument that he lacked capacity to enter the guilty pleas. Again, it appears to the Court that the Defendant's motion may only be in response to what he believes is an unfavorable Addendum to the PSR. This factor weighs strongly against permitting withdrawal.

### 4. The Withdrawal Would Substantially Inconvenience the Court and Waste Judicial Resources

The Defendant's assertion that vacating his guilty pleas would not substantially inconvenience the Court or waste judicial resources is also unsupported and without merit. The Court's docket is heavy, and coordinating a two-week trial of this complexity is no simple task. As the court noted in *Carr*: "Rescheduling such a lengthy trial would

---

[55] *Id.*
[56] *Id.* at 344.

have inconvenienced the trial court by disrupting its docket ...This conclusion is especially true because the court would had to have given the case priority over other pending civil actions because it was a criminal case."[57] The same is true for the case before the Court. These factors weigh against withdrawal.

### 5. Close Assistance of Counsel was Available

The Defendant claims that, although close assistance of counsel was available, the Defendant was unable to assist in the preparation of his own defense due to his medical condition. The Defendant contends that "Reggie was unable to provide counsel with his first-hand recitation of critical facts relevant to the charges contained in the indictment."[58] Defendant further contends this inability "thwarted his counsel's ability to adequately defend the charges"[59] at the mandated trial date. The Court finds these contentions ludicrous.

First, the Defendant's original attorney began filing substantive motions on Defendant's behalf almost immediately after the original indictment. Courcelle filed motions challenging, *inter alia,* the Court's jurisdiction, venue, admissibility and authentication of audio evidence, witnesses, the use of 404(b) evidence, and various legal arguments. Multiple motion hearings were conducted on various dates by the Court prior to the Defendant's stroke on October 6, 2014. The Court observed the Defendant's extensive participation and counsel's vigorous representation of the Defendant during all of the proceedings. It strains credulity for the Defendant to now claim that, after a year of extensive litigation in this matter, three weeks before trial,

---

[57] *Id.* at 345.
[58] Rec. Doc. No. 194-1, p. 11.
[59] *Id.*

13

Courcelle lacked knowledge of the Defendant's "first-hand recitation of critical facts relevant to the charges contained in the indictment."

Second, the Court has already detailed above the unquestionable advice provided to the Defendant by Courcelle before and during the arraignment proceeding. The Court gives great weight to the assurance by an officer of the Court at the Defendant's arraignment that Courcelle had discussed the consequences of a guilty plea at length with the Defendant, that the Defendant understood the rights he was waiving, and that the Defendant was physically and mentally capable of understanding the proceedings. As stated previously, Courcelle and the Defendant had prepared their own Factual Basis, which conflicted somewhat with that proffered by the Government, and Courcelle indicated that the Defendant aided in the preparation of the document. The transcript citations set forth above likewise indicate that Courcelle had time to confer with the Defendant at counsel table during the proceedings to ensure the Defendant's understanding of the matters at hand. There is no doubt that the Defendant had close, able assistance of counsel at every stage of this litigation. Thus, this factor also weighs against withdrawal.

6. The Original Plea was Knowing and Voluntary

The Defendant argues this his pleas were not knowing or voluntary because he had no choice but to enter such pleas. Because Section II of this opinion adequately establishes both the knowing and voluntary nature of the Defendant's guilty pleas in this matter, the Court finds this factor weighs against withdrawal.

## C. Alleged Rule 11 Defects

The Defendant also contends that the transcript of the plea colloquy reveals the Court failed to advise the Defendant that he was waiving certain critical rights by pleading guilty. The Defendant claims that the Court failed to advise him of the right to be represented by counsel, and if necessary have the Court appoint counsel, at trial and every other stage of the proceedings; and the right to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.[60] The Defendant further claims that the Court failed to ensure that his pleas were voluntary by not inquiring whether the Defendant was forced, threatened, or coerced into entering the pleas.

A guilty plea involves the waiver of several constitutional rights, and, accordingly, it must be made knowingly and voluntarily.[61] Rule 11 sets forth certain procedures for the district court to follow to ensure that a guilty plea is made voluntarily and knowingly. When a defendant alleges that the district court's compliance with Rule 11 was flawed, the Fifth Circuit employs a two-part harmless-error analysis: "(1) [d]id the [district] court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?"[62] A variance from the requirements of this rule is harmless error if it does not affect substantial rights.[63] "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court

---

[60] See Fed. R. Crim. P. 11(b)(1)(D) & (b)(1)(E).
[61] See Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); see also Fed.R.Crim.P. 11.
[62] United States v. Gutierrez, 250 F.3d 739 (5th Cir. 2001)(quoting United States v. Johnson, 1 F.3d 296, 298 (5th Cir.1993) (en banc); see also United States v. Henry, 113 F.3d 37, 40 (5th Cir.1997)).
[63] Fed. R. Crim. P. 11(h).

committed plain error under Rule 11, must show a reasonable probability that but for the error, he would not have entered the plea."[64]

The Fifth Circuit has instructed that "[t]he district court need not follow a strict Rule 11 script when conducting its colloquy for the plea to be voluntary and knowing.[65] 'A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats ... [or] misrepresentation (including unfulfilled or unfulfillable promises) ... .'"[66]

In *United States v. Gutierrez*, the defendant claimed several Rule 11 violations during his plea colloquy, one of which was that the district court failed to inquire if he had been threatened or coerced into entering his plea. The Fifth Circuit held that, "although the district court did not specifically ask if Gutierrez was entering his plea free from any threats, inducements, or promises apart from those in the plea agreement, Gutierrez does not indicate that he was threatened or induced by promises other than those in the plea agreement to plead guilty. This Rule 11 omission also probably did not affect his plea."[67] The same can be said of this Defendant. The record reflects that this Defendant is a college-educated professional who understood his rights, and nothing in the plea colloquy suggests that the Defendant believed he was being threatened or coerced into entering his guilty pleas. Courcelle's representations and the Defendant's own answers to the Court's questions belie such a contention. Moreover, as the Government points out, the Defendant fails entirely to explain how the inclusion in the

---

[64] *United States v. Dominguez Benitez*, 542 U.S. 74, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004).
[65] *Id.*, citing *Henry*, 113 F.3d at 42.
[66] *Id.*, quoting *Henry*, 113 F.3d at 41 (internal quotation marks and citations omitted).
[67] *Id.*

plea colloquy of the items he claims were excluded would have in any way changed his decision to plead guilty.

## IV. CONCLUSION

Accordingly, after considering the totality of the circumstances, all of the *Carr* factors, the testimony and evidence presented at the hearing, and applying the law to the facts of this case, the Defendant's *Motion to Withdraw Guilty Plea*[68] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on June 22, 2015.

*Shelly D. Dick*
JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[68] Rec. Doc. No. 194.